JOSEPH MIKA, PLAINTIFF IN ERROR, v. PASSAIC PRINT
WORKS, DEFENDANT IN ERROR.

Submitted March 12, 1908—Decided June 23, 1908.

1.  A servant's hand was caught between two cylinders of a calender machine while he was trying to straighten out the cloth and prevent a double edge from going through. It appeared that the cylinders revolved with great rapidity and that the servant had never worked a calender machine before, although he had been for some time employed about the factory. When told to work on the machine by the second boss he claims he told him he did not know how to work on a calender, and that the reply was that if he did not want to do that kind of work he could go home. *Held,* that even if it be assumed that the master failed in the performance of his duty in not instructing the servant as to the operation of the machine, the injury was not due to any such

neglect and it was not error to nonsuit the plaintiff, for both master and servant had equal means of forming a correct judgment of the danger.

2. The act of 1904 (*Pamph. L., p.* 156), which, by section 13, provides that whenever practicable all machinery shall be properly guarded, does not abolish the common law principle of assumption of risk, for the statute provides a penalty alone for its violation, and nothing is contained in the act referring to or concerning civil liabilities.

On error to the Passaic Circuit Court.

The case was tried before Hon. Wilbur A. Heisley, circuit judge, and a jury, and a judgment of nonsuit ordered.

For the plaintiff in error, *Francis Scott.*

For the defendant in error, *John B. Humphreys.*

The opinion of the court was delivered by

VROOM, J.   The action was for injuries received by the plaintiff while employed in the factory of the defendant at Passaic, New Jersey. He was working at a machine called a calender machine, and which is used to stretch, press and finish cloth.

A model of the machine and photographs of the same were offered in evidence and showed that the machine consisted of three cylinders, placed one above the other, and a stretcher, which is another cylinder placed in front of the other three. The cylinder known as the stretcher has staves upon it designed to stretch the width of the cloth as it passes over the stretcher. The staves of the stretcher are made of metal and are corrugated. They slide backward and forward along the horizontal length of the stretcher as the stretcher revolves. The cloth is caught by this backward and forward motion of the staves as it revolves about the stretcher and its width is stretched in that way. After leaving the stretcher the cloth passes between the two lower cylinders in the rear and revolves round the rear of the middle cylinder and then around the top

cylinder, from which it is wound onto a roll in the rear of the machine.

The duties of the plaintiff were simply to attend to the cloth as it ran through the machine. It was shown that the cloth was delivered to the machine in rolls, the plaintiff was to adjust the roll in place, and when its contents had run through the calender, to adjust another. It was also his duty to watch the cloth as it passed through the machine. As the plaintiff himself said, "I was to watch that this cloth should go in there straight, that it should not turn."

On the day of the accident the plaintiff further says that he was straightening out the cloth because he saw a double edge coming and that he "was trying to rectify the double edge from the bottom underneath the cloth." His hand was caught between the cylinder with the staves, called the stretcher, and the next cylinder. It appeared that the cylinders revolved with great rapidity, one witness saying they were liable to go round twenty-five times a minute.

The plaintiff claimed that he had been put to work on this calender machine without any instruction, and that he had never worked a calender machine before, although he had been for some time employed about the factory. When told to work on the machine by the second boss, plaintiff says he told him that he did not know how to work on a calender, and the reply was that if he didn't want to do that kind of work he could go home. The accident occurred on the third day he was working on the calender machine.

At the close of the plaintiff's case a motion for nonsuit was made and granted, the learned trial judge saying, in part: "I do not see how any person can successfully contend that the injury which this man suffered was not the result of an obvious risk. If he had been feeding this cloth on two rollers it required no one to tell him that if he let his fingers come in contact with those rollers he would get hurt. Now he was not exactly feeding the cloth on the rolls, but he was undertaking to smooth the edges of a rapidly moving cloth drawn at a great tension over this stretcher; he began with his hands within fourteen or fifteen inches, certainly, of the place of con-

tact where the danger was apparent, his hand could be drawn there in a second of time; it was a dangerous occupation of course; he saw the speed at which the cylinder was revolving; it may be said that he was told to do this work or leave; that is no excuse; he had the right to exercise the option to leave or to stay on.  *  *  *  I think it was an obvious risk, and the motion on that ground should be granted."

The only assignment of error seriously relied upon by the plaintiff in error, and requiring consideration here, is to the granting of the nonsuit at the close of plaintiff's case.

The evidence discloses that at the trial no attempt was made to establish any of the charges made in the declaration, excepting (1) that the plaintiff was inexperienced and was put to work upon the machine without any instructions or warning, and (2) that the presses and rollers were unguarded, contrary to the statute in such case made and provided.

The case presented here is not, in my opinion, one where the injury to the plaintiff can be imputed to any neglect of the master in not instructing him as to the operation of this machine.  Even should it be assumed that the master failed in the performance of his duty in not instructing him as to its operation, I do not see that the injury was due to any such neglect.  As was said in *Foley* v. *Jersey City Electric Co.*, 25 *Vroom* 414: "The servant and the master had equal means of forming a correct judgment.  Therefore whatever want of prudence is chargeable to the one must be imputed to the other."  The danger here which was to be apprehended, that of having the hand caught between the rolls, was a perfectly obvious one, and as readily discernible by the servant as by the master.  It is unnecessary further to enlarge upon or discuss the rule laid down in this court in *Coyle* v. *Griffing Iron Co.*, 34 *Id.* 612, that "the servant assumes all the risks and perils usually incident to the employment, and included in such risks and perils are those which it is a part of his duty to take knowledge of by observation."  *Chandler* v. *Coast Electric Railway Co.*, 32 *Id.* 380; *Johnson* v. *Devoe Snuff Co.*, 33 *Id.* 417; *Tompkins* v. *Engine Co.*, 41 *Id.* 330.

The case on the brief of defendant, *Rooney* v. *Sewall*, &c.,

*Cordage Co.,* 161 *Mass.* 153, is instructive and decisive as to this point. Justice Knowlton there said: "When the plaintiff entered the defendant's service he impliedly agreed to assume all the obvious risks of the business, including the risk of injury from the kind of machinery then openly used. It is not material whether he examined the machinery before making the contract or not. He could look at it if he chose, or he could say, 'I do not care to examine it; I will agree to work in this mill and I am willing to take my risk in regard to that.' In either case he would be held to contract in reference to the arrangement and kind of machinery then in use by his empolyer, so far as these things were open and obvious, so that they could readily be ascertained by such examination and inquiry as one would be expected to make if he wished to know the nature and perils of the service in which he was about to engage."

As was insisted upon the argument, there is a very marked distinction between the danger which is incident to the operation of a machine in its normal condition and a danger which is incidental to it by reason of some defect in the machine. In the case before us the evidence clearly indicates that the danger of catching hold of the cloth as it was taken hold of by the plaintiff was a danger incident to the machine in its ordinary and normal operation, and was such an obvious danger that there can be no escape from the conclusion that it was one of the ordinary risks which had been assumed by the plaintiff.

The remaining question in the case was that raised by the averment in the declaration that the presses and rollers were unguarded and unprotected contrary to the statute in such case made and provided.

The reference was to the act of 1904 (*Pamph. L., p.* 152), entitled "An act regulating the age, employment, safety, health and work hours of persons, employes and operatives in factories," &c. Section 13 of this act provides: "Whenever practicable, all machinery shall be provided with loose pulleys, all vats, pans, saws, planers, cogs, gearing, belting, shafting,

set screws, drums and machinery of every description shall be properly guarded."

Only one witness testified that it was practicable to have the machines guarded and pointed out where it could be done. It nowhere appears, however, in the case that machines of this character ever had been guarded or that there existed any necessity therefor beyond the statement of this one witness.

But admitting that by reason of the practicability of guarding these machines there was created, under the statute, a duty in the master to perform this specific duty for the safety of his servants, this does not, in my opinion, abolish the common law principle of the assumption of risk.

Nothing contained in the statute provides that assumed risk on the part of the servant shall not be presented as a defence where one violating the statute is sued by this servant by reason of such violation. The statute provides a penalty alone for its violation, and nothing is contained in the act referring to or concerning civil liabilities.

While this question of the availability of the defence of assumption of risk by one who has not complied with a statute requiring the placing of safeguards over machines has not been before our courts, it has received much attention in many of the courts of other states and those of the United States.

In 4 *Am. & Eng. Anno. Cas.* 587, is printed the report of a case decided in the State of Washington. *Hall* v. *West & Slade Mill Co.,* 39 *Wash.* 447. This case expresses a pronounced view in favor of the non-availability on the part of the master of the defence of assumption of risk, who has not complied with the statute requiring the guarding of machinery. An examination of the case shows that it was decided by a divided court and a vigorous dissenting opinion filed. The report of the case in the volume cited has been most fully and thoroughly annotated, and the decisions favoring and rejecting the above doctrine collated.

After an examination of the leading cases I feel confident that the weight of authority is adverse to the decision in the case of *Hall* v. *West & Slade Mill Co., supra,* and that the true rule is laid down in the adjudications of the courts of the

United States and of the States of Maine, Rhode Island, Minnesota, Ohio, Wisconsin and New York. In the latter state the leading case is *Knisley* v. *Pratt,* 148 *N. Y.* 372. The opinion was by Judge E. F. Bartlett, and I feel warranted in quoting it in part as expressive of the true principles governing this question: "In order to sustain the judgment in favor of the plaintiff it is necessary to hold that where the statute imposes a duty upon the employer, the performance of which will afford greater protection to the employe, it is not possible for the latter to waive the protection of the statute under the common law doctrine of obvious risks.

"We regard this as a new and startling doctrine calculated to establish a measure of liability unknown to the common law and which is contrary to the decisions of Massachusetts and England under similar statutes. * * * We think this proposition is essentially unsound and proceeds upon theories that cannot be maintained. It is difficult to perceive any difference in the quality and character of a cause of action whether it has its origin in the ancient principles of the common law, in the formulated order of modern decisions, or in the declared will of the legislature. Public policy in each case requires its rigid enforcement, and it was never urged in the common law action of negligence that the rule requiring the employe to assume the obvious risks of the business was in contravention of that policy. * * * We are of the opinion that there is no reason, in principle or authority, why an employe should not be allowed to assume the obvious risks of the business as well under the Factory act as otherwise. There is no rule of public policy which prevents an employe from deciding whether in view of increased wages, the difficulties of obtaining employment, or other sufficient reasons, it may not be wise and prudent to accept employment subject to the rules of obvious risks. The statute indeed does contemplate the protection of a certain class of laborers, but it does not deprive them of their free agency and the right to manage their own affairs."

I would also refer to *Langlois* v. *Dunn Worsted Mills,* 25 *R. I.* 645; 2 *Lab. M. & S.,* §§ 649, 650, and cases cited in

4 *Am. & Eng. Anno. Cas.* (on *p.* 599), under the title "Plea of Assumption of Risk Available."

. The other assignments were directed to exceptions taken to the admission or rejection of evidence.  I found no errors in the ruling of the court.

The judgment below should be affirmed.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, VOORHEES, MINTURN, VROOM, GRAY, DILL, J.J.    11.

*For reversal*—THE CHANCELLOR, BERGEN, BOGERT, VREDENBURGH, GREEN, J.J.    5.