18 N.J. Super. 380 (1952)
87 A.2d 349
JULIA TRECARTIN, ADMINISTRATRIX AD PROSEQUENDUM UPON THE ESTATE OF RICHARD TRECARTIN, DECEASED, PLAINTIFF-RESPONDENT,
v.
MAHONY-TROAST CONSTRUCTION COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 18, 1952.
Decided March 6, 1952.
*384 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Marshall Crowley argued the cause for appellant (Messrs. Shaw, Hughes & Pindar, attorneys; Mr. Charles H. Hoens, Jr., on the brief).
Mr. Maurice C. Brigadier argued the cause for respondent (Mr. Nathan Baker, attorney).
The opinion of the court was delivered by WILLIAM J. BRENNAN, JR., J.A.D.
Plaintiff's decedent, a structural iron worker in the employ of Terry Steel Contractors, Inc., died from injuries suffered when he fell, while at work, from the 150-foot level of an openwork structural steel television and radio tower being erected by his employer under subcontract with the defendant, the general contractor engaged by Bamberger Broadcasting Service, Inc., to build a television and radio broadcasting station at North Bergen. The decedent was stooped over on a narrow footwalk and lost his balance when struck on the back and shoulders by heavy bolts which dropped from the 210-foot level where two other Terry employees were bolting sections. Decedent had not been provided with a safety belt or life line at any time during the period of more than a month that he worked on the job.
The plaintiff widow, as administratrix ad prosequendum, brought this action against the defendant general contractor, alleging that her husband's death was caused by its negligence. *385 She recovered a jury verdict of $100,000 in the Law Division, Hudson County, and defendant appeals from the judgment entered thereon.
The case was submitted to the jury upon instructions that a finding of negligence might be rested upon (1) the violation of an alleged duty under "An Act establishing a safety code for workers in the construction industry," L. 1930, c. 185, R.S. 34:5-1, etc., to provide the subcontractor's employees with safety belts and life lines, R.S. 34:5-136 to 140; and (2) upon active interference with the matter of the supplying by decedent's employer of safety belts and life lines and the actual participation in the failure of decedent's employer to supply the same by defendant's giving of specific instructions to the subcontractor not to permit its employees to use them.
Defendant employed Lester Clark as project manager to supervise the execution of its contract with Bamberger Broadcasting Service, Inc. The tower work, except for the concrete foundations constructed by defendant, was entirely sublet under independent contracts; the assembling and erection of the tower sections were subcontracted to Terry Steel Contractors, Inc.; the painting and electrical work was sublet to other subcontractors; even the inspection of the tower work as it progressed was subcontracted to a concern specializing in that service. Clark's duty, performed contemporaneously with like supervision of other projects under contract with other owners at other places, was to oversee the timely completion of the subcontracts and of the work generally according to the plans and specifications. The control of the manner and methods by which the work called for by Terry's subcontract was to be performed and the supervision and direction of the Terry employees was not reserved by defendant in the subcontract with Terry; rather, such control and direction were solely Terry's responsibility as part of the specialized skills and services engaged by the defendant.
*386 Section 161 of the Safety Code makes the duty under section 136 to provide life lines and safety belts, as in the case of other duties under the Code, that of "any manager, superintendent, owner, foreman or other person in charge of any building, construction or other place, in which this chapter is violated * * *." (Italics supplied.) Violations are punishable by fine for a first offense and by imprisonment for subsequent offenses, and under section 160 any officer of a corporation which is guilty of violation is made personally liable to the penalty for such violation.
A general contractor who sublets work, relinquishing the right of control and direction over the manner in which the work shall be done, and of the employees engaged in doing it, and exercising only such general superintendence as is necessary to see that the subcontractor performs the contract, ordinarily has no duty to protect an employee of the subcontractor from the very hazards that arise from the doing of the contract work itself; the subcontractor and not the general contractor has the duty to guard his employees against such dangers. Broecker v. Armstrong Cork Co., 128 N.J.L. 3 (E. & A. 1942); cf. Farrell v. Diamond Alkali Co., 16 N.J. Super. 163 (App. Div. 1951). A duty created by the Safety Code becomes an obligation of the construction general contractor only if he is a "person in charge of" "any * * * place" where performance of the particular duty is requisite. We find nothing here to support an inference that defendant was "in charge" of the "place" at which decedent was working at the time of his fall; therefore defendant was not obliged to provide him with a safety belt and life line as required by the Code. The "place" was the very work itself. Mere reservation of supervision for the purpose of seeing that the contract work is done in compliance with the plans and specifications is not control of the work or of the manner of doing it and did not operate to put defendant "in charge" of that "place" nor impose upon defendant any statutory duty to the deceased so long as the supervision related only to the results and not to the *387 method of doing the work. Homin v. Cleveland & Whitehill Co., 281 N.Y. 484, 24 N.E.2d 136 (Ct. App. 1939); Lowenhar v. Commercial Outfitting Co., Inc., 260 App. Div. 211, 21 N.Y.S.2d 112 (1940), affirmed 285 N.Y. 671, 34 N.E.2d 376 (Ct. App. 1941). The Safety Code is a penal statute not to be deemed to subject a person to punishment for its violation except as its application to him plainly appears. State v. Carr, 118 N.J.L. 233 (E. & A. 1937); Smith v. Asbury Park, 3 N.J. Super. 161 (App. Div. 1949); State v. Perretti, 9 N.J. Super. 97 (App. Div. 1950).
Defendant neither reserved control of the equipment to be used by Terry in the doing of the erection work, nor of the manner or method of its doing, nor any direction of its employees engaged in the work of erection. The Safety Code does not by its terms make the general contractor liable without regard to its having such direction or control at the place where the violation occurs. The Legislature decidedly did not contemplate that the officers of a corporate general contractor are to be subjected to fine or imprisonment as "in charge of" a place where a violation occurs solely by reason of the reservation of the right to supervise results. Courts of other states have had no difficulty in reaching that conclusion under similar statutes, often despite wording more readily justifying the construction that the Legislature intended to impose the duty upon the general contractor. Leet v. Block, 182 Ind. 271, 106 N.E. 373 (Sup. Ct. 1914); Gibbons v. Chapin & Gore, 147 Ill. App. 575 (1st Dist. 1909); Beasley v. Bond, 173 Okla. 355, 48 P.2d 299 (Sup. Ct. 1935); Tamm v. Sauset, 67 Ore. 292, 135 P. 868 (Sup. Ct. 1913); and see, generally, Annotation, General Contractor's Liability for Injuries to Employees of Other Contractors on the Project, 20 A.L.R.2d 868, 901 (1951); see also Kennedy v. Kaufman & Sons, 86 N.J.L. 685 (E. & A. 1914). The decisions are in accord that there is no reason why in the interests of justice the statute should apply to a case where the general contractor, as in the present case, has contracted away the direction and control of the details of the work and the *388 manner of its performance at the place where the violation occurs. "That authority precedes responsibility, or control is a prerequisite of liability is a well-recognized principle of law as well as of ethics." Mack v. Marshall Field & Co., 218 N.C. 697, 12 S.E.2d 235 (Sup. Ct. 1940); see also Lawton v. Morgan, Fliedner & Boyce, 66 Ore. 292, 131 P. 314, rehearing denied 134 P. 1037 (Sup. Ct. 1913); Rosenquist v. Brookdale Homes, Inc., 133 N.J.L. 305 (E. & A. 1945); Terranella v. Union Bldg. & Construction Co., 3 N.J. 443 (1950); Meny v. Carlson, 6 N.J. 82 (1950).
The Safety Code fixes liability upon such person or persons as have the mentioned control over the place where the violation occurs and brings within its operations only such persons as are in actual control and who fail to do the things commanded by the statute to be done at that place. The words "any manager, superintendent, owner, foreman or other person" are qualified by the words "in charge of any * * * place, in which this chapter is violated" and are limited to such persons so "in charge" to the exclusion of all others.
Since defendant was not a "person in charge" obliged in the circumstances proved to comply with section 136 of the Code, it was error to submit to the jury the question whether the defendant was negligent by reason of mere failure to provide decedent with a safety belt and life line.
There was, however, evidence of negligence independent of a violation of any statutory duty in proofs which, if believed, justified a finding by the jury that defendant, through Clark, actually interfered with the matter of supplying of safety belts and life lines by the subcontractor, and participated in the latter's failure to do so, by giving specific instructions to decedent's foreman that they were not to be used. Mere knowledge that the subcontractor was violating the Safety Code in not supplying his workers with the devices is not sufficient to charge the defendant with liability, it not being in charge of or exercising control and direction of the work or the place of its performance and not directing *389 the subcontractor's employees in the doing of the same. But when the general contractor gives specific instructions which necessarily involve the safety of the subcontractor's employees, actively interfering with the subcontractor's supplying of safeguards, and participating in the subcontractor's failure to supply them, an exception subjecting the general contractor to liability for negligence is recognized. Broderick v. Cauldwell-Wingate Co., Inc., 301 N.Y. 182, 93 N.E.2d 629 (Ct. App. 1950).
Here, there was evidence that about a month before the date of the accident, Collins and Dietz, fellow workers of the decedent, had a conversation with their foreman, Eder, and Clark in a shanty on the ground. Collins testified:
"Well, I was down in the shanty after a week or so on the job, and I asked the foreman which Mr. Clark was alongside of him, I asked him if we had to get safety belts and life lines on the job; and the foreman says to me, `We haven't got any, but we will have to get them'; and Mr. Clark stepped in and says, `We did without them before and the biggest part of the job is finished. You got straight work going ahead now, and we can do without them from now on. It will only hold the job up."
Dietz testified:
"Jim (Collins) had gone into the office and asked Joe Eder for the use of safety belts and lines and so forth, and Mr. Clark had said no; no; he wouldn't permit it, it would take too much time, the tower has gone thus far without it and why can't it go the rest of the way. He said the hardest part was over."
This occurrence was flatly denied by Clark. However, if believed, the testimony would support a finding that the general contractor was negligent. See Riley v. Jersey Leather Co., 100 N.J.L. 300 (E. & A. 1924).
Defendant argues that, if true, Clark's statements were made as a mere volunteer and not as its agent, so that it is not answerable for them, relying on Bielecki v. Max Hertz Leather Company, 3 N.J. Misc. 375 (Sup. Ct. 1925), affirmed 102 N.J.L. 432 (E. & A. 1926). The cases are clearly distinguishable. Here, it being admitted by defendant that *390 Clark's authority as project manager was to see that the work was carried out in accordance with the terms of the subcontract, a jury question was presented whether the statements, if made, were within the scope of his authority to promote the discharge of his assignment. Miller v. Stieglitz, 109 N.J.L. 138 (E. & A. 1932); Dierkes v. Hauxhurst Land Co., 80 N.J.L. 369 (E. & A. 1911).
So it was proper for the trial court to charge, as it did, that the defendant was negligent "If the jury find that Mr. Clark, acting within the scope of his authority as the project manager of the defendant, directed that no safety belts be supplied the workmen and that as a result of Mr. Clark's direction no safety belt was provided for the decedent."
However, there must be a new trial because the trial court instructed the jury that liability could be predicated upon two distinct propositions, one correct and the other erroneous. It will not be presumed that the jury followed the correct instruction, but the judgment will be reversed. King v. Patrylow, 15 N.J. Super. 429 (App. Div. 1951).
Since there will be a new trial, we give our views upon other questions argued in the briefs.
Plaintiff's brief argues that liability of the defendant may be founded upon breaches by the defendant of covenants in its contract with Bamberger Broadcasting Service, Inc., incorporated by reference in the subcontract with Terry. In the Bamberger contract defendant undertook "to take all necessary precautions for the safety of employees on the work and (to) comply with all applicable provisions of Federal, State, and Municipal safety laws * * * and (to) maintain * * * all necessary safeguards for the protection of workmen * * *." The subcontract with Terry provided that "The Contractor (defendant) and Subcontractor (Terry) agree to be bound by the terms of" defendant's contract with Bamberger. These covenants did not call upon defendant to comply with section 136 inasmuch as that is not a safety law "applicable" to defendant in the circumstances. Plaintiff's contention must therefore stand *391 or fall upon the undertakings to take all "necessary" precautions and to maintain all "necessary" safeguards for the protection of "workmen." The trial court did not instruct the jury that liability of the defendant might be based upon its breach of these covenants, doubtless because the suit is founded upon alleged negligence and the decisions of our courts of last resort still adhere to the principle that ordinarily liability in tort to one not a party to a contract can be founded only upon a positive duty, independent of the contract, although arising out of a state of facts created by the contract, Marvin Safe Co. v. Ward, 46 N.J.L. 19 (Sup. Ct. 1884); Styles v. Long Co., 70 N.J.L. 301 (E. & A. 1904); Miller v. Davis & Averill, Inc., 137 N.J.L. 671 (E. & A. 1948); Bacak v. Hogya, 4 N.J. 417 (1950). "This doctrine has been the subject of much discussion and comment both at the trial level and in the appellate courts. It has been debated many times and the judicial views supporting and opposing it have been expressed and recorded. In Colligan v. 680 Newark Ave. Realty Corp., 131 N.J.L. 520 (E. & A. 1943), the court considered the question and was equally divided." Daniels v. Brunton, 7 N.J. 102, 106 (1951). Plainly, in the present state of the law this intermediate appellate court is not at liberty to recognize any merit in plaintiff's argument.
The trial court admitted the contracts in evidence over defendant's objection, but this was not error as they were admissible at least for the purpose of evidencing the state of facts created by the contracts, particularly the relationships of the parties inter sese. If defendant apprehends that the jury will improperly consider the contracts for other purposes, its remedy is to submit a request to the trial judge to instruct the jury as to the limited offices the contracts may serve and to point out specifically the purposes as to which they have no legal application. Gindin v. Baron, 16 N.J. Super. 1 (App. Div. 1951).
Defendant pleaded the defense of assumption of risk and contributory negligence and submitted several requests to *392 charge pertinent to them. The trial court refused to charge any of the submitted requests and as to assumption of risk expressly stated to the jury, "I refuse to charge you that that is a defense available to the defendant because in my opinion that defense is not available in this case."
Comments upon the difficulty of distinguishing between contributory negligence and assumption of risk are to be found in recent decisions of both the Supreme Court and this court, White v. Ellison Realty Corp., 5 N.J. 228, 235 (1950); Halpern v. Barbara Holding Corp., 5 N.J. Super. 87 (App. Div. 1949). In the White case it is said, "These legal concepts are virtually identical"; and see 65 Harvard Law Review, 623 (1952).
We are satisfied that upon this record defendant is entitled to a jury determination upon both defenses. As defendant was not obliged to comply with section 136 of the Safety Code, the argument of the plaintiff in support of the trial court's ruling becomes irrelevant, namely that the Safety Code is a statute so clearly intended to protect construction workers as a class against their own inability to protect themselves that the policy of the Legislature is to be understood to mean that such defenses are not available to a violator, even though, unlike the Workmen's Compensation Act, R.S. 34:15-2, the statute does not expressly provide that the defenses of assumption of risk and contributory negligence are abolished. Koenig v. Patrick Construction Corp., 298 N.Y. 313, 80 N.E.2d 133 (Ct. App. 1948); 10 A.L.R.2d 853; 56 C.J.S., Master and Servant, sec. 369 (b), p. 1170; but see Evers v. Davis, 86 N.J.L. 196 (E. & A. 1914); Mika v. Passaic Print Works, 76 N.J.L. 561 (E. & A. 1908); Daniels v. Brunton, supra.
Nor may the defendant under the circumstances of this case be denied the defenses as a matter of law upon the theory that the decedent's failure to use a safety belt and life line was in obedience to an order given by a person in the capacity of a superior, and so was not actually voluntary since he had little, if any, choice but to obey the order. Not *393 only is it generally held that even in such circumstances it is a jury question whether the workmen's conduct shall defeat his claim, Broderick v. Cauldwell-Wingate Co., Inc., supra; Laragay v. East Jersey Pipe Co., 77 N.J.L. 516 (E. & A. 1909); 2 Shearman & Redfield, Negligence (1941), pp. 586-590, but also there is no proof whatsoever that defendant, or Clark on its behalf, or, indeed, his own employer, ever directed decedent to work without a safety belt and life line, or even that decedent ever complained to anyone in authority about the failure to supply them in the month and a half he worked on the job. All that appears is that he and his fellow worker, Collins, discussed safety belts at or about the time of the alleged shanty meeting and decedent, according to Collins, merely said he "thinks we should use them." This shows that decedent was aware that protection was necessary, but does not suggest, nor does anything else in the record, that he failed to use a belt and life line because he was specifically directed not to do so. Neither Collins nor Dietz testified that either informed decedent of Clark's alleged remarks in the shanty. Whether, therefore, decedent endured the risk because he felt constrained to do so by an order from someone in a superior position does not appear to be a factor in the case.
Defendant makes no better case for its contention that decedent was guilty of contributory negligence, or assumed the risk, as a matter of law. The ordinary risks of decedent's calling, involving working at great heights upon narrow girders and catwalks, were part of the ordinary methods of pursuing his trade, even though they might be called extraordinary with reference to a different business. He had worked without incident for over a month without a safety belt and life line. But if his death was the result of being struck by the falling bolts, upon this record reasonable men could differ whether the risk of that occurrence was a hazard obvious to the decedent. On the one hand, there was evidence that the falling of bolts was not an unusual occurrence on jobs of this character; the cry "Bolts!" is a recognized signal *394 in the trade to workers on lower levels that objects are falling from above and that they should take steps to protect themselves. On the other hand, there was testimony that decedent was working with his back to his fellow workers above him, that bolts "very seldom fell on this job," and that the explanation of the large number on the ground around the tower was that 64,000 bolts were required to assemble the tower and there was no other place to store them until they were used. There was also evidence that the fellow workers using the bolts on the 210-foot level and the scale boxes containing the bolts were not directly above Trecartin just before the accident; no one was able to say just who caused them to fall or how they came to fall and strike decedent. Plainly, whether the danger was fairly to be anticipated by decedent that in working without a safety belt and life line he might be struck by falling bolts and be caused to fall from the structure, is a question for the jury. Laragay v. East Jersey Pipe Co., supra; Toohey v. Webster, 97 N.J.L. 545 (E. & A. 1922); Albanese v. Central Railroad of N.J., 70 N.J.L. 241 (E. & A. 1904); Clayton v. Ainsworth, 122 N.J.L. 160 (E. & A. 1939); Flanigan v. Guggenheim Smelting Co., 63 N.J.L. 647, 662 (E. & A. 1899); Snyer v. N.Y. & N.J. Tel. Co., 73 N.J.L. 535 (E. & A. 1906). The case of Mika v. Passaic Print Works, supra, relied on by defendant as supporting the contention that decedent must be deemed to have assumed the risk as a matter of law, is plainly distinguishable. It was there held that the danger to plaintiff of having his hand caught between the rolls of the machine "was a perfectly obvious one" to him.
Reversed and remanded for a new trial. Costs to abide the event.