Martha M. KIRK, an adult, and Kenneth William Kirk, a minor, who sues by his Guardian Ad Litem, Martha M. Kirk, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 3067.

United States District Court
D. Idaho, S. D.
March 20, 1958.

Richards, Haga, & Eberle, Boise, Idaho, for plaintiff.

Ben Peterson, U. S. Dist. Atty., and Kenneth G. Bergquist, Asst. U. S. Dist. Atty. for the Dist. of Idaho, Boise, Idaho, for defendant.

FRED M. TAYLOR, District Judge.

This cause was tried before the Court, without a jury, on November 29 and 30, 1956. At the conclusion of the trial counsel for the respective parties waived oral argument but were granted time within which to file briefs. The consideration of this matter has been delayed awaiting the briefs on behalf of the respective parties. The plaintiffs did not file their brief until July 31, 1957; the defendant did not file its answering brief until January 10, 1958. Since plaintiffs have not filed a reply brief the Court assumes they do not intend to do so.

This is an action under authority of the Federal Tort Claims Act, Title 28 U.S.C.A. § 1346 and § 2671 et seq. The United States Court of Appeals for the Ninth Circuit, held in an opinion rendered April 13, 1956, 232 F.2d 763, 770, that, "under the provisions of that Act,

plaintiffs had the right to sue the defendant for negligence in the same manner in which the Idaho courts have held that an injured employee may sue a third person, one not an 'employer' under the Act, as at common law or under the wrongful death statute."

The plaintiffs are the widow and minor child of William M. Kirk, deceased, who lost his life when he fell from a scaffold upon which he was working as a carpenter during the construction of Lucky Peak Dam on the Boise River in Idaho. The action is predicated upon the wrongful death statute of the State of Idaho § 5–311, Idaho Code.

Lucky Peak Dam was being constructed in accordance with plans and specifications prepared by the Department of Army Corps of Engineers, under a contract between the United States and Bruce Construction Co., and Russ Mitchell, Inc. (hereinafter referred to as contractor) general contractors for the construction of certain control works at the outlet of the dam. Kirk was killed during the course of preparing a concrete form for the purpose of raising it. The form was constructed so as to make a form wall on one side, against which the concrete was poured, and an upper and lower level of catwalks on the opposite side. In moving this form, it was lifted by a crane and lines fastened to metal "eyes" attached to the tops of the panels composing the form. When the form was being used it was bolted to the structural steel by two rows of "she" bolts. On completion of pouring and setting of the concrete, lines from the overhead crane were fastened to the "eyes" attached to the top of the form, the "she" bolts were removed and the form forced away from the wall and lifted.

The form on which William Kirk was working at the time of the accident was composed of a twenty foot panel and a five foot panel, which were similarly constructed and completely separable by the removal of the three or four three-quarter inch bolts joining them together. On some occasions each panel was moved separately and at other times the two panels were moved as a unit. When moved as a unit the panels were left bolted together and were lifted by separate lines from the crane being attached to an "eye" in each panel.

Approximately five days prior to the accident some of the "she" bolts and all of the bolts holding the two panels together were removed on order of the foreman of the contractor. On the day of the accident lines were run from the crane and attached to an "eye" at the top of each panel, apparently for the purpose of lifting both panels as a unit, and then the remaining "she" bolts were removed. After other employees of the contractor had finished removing the "she" bolts on which they were working they stepped off the form; Kirk, at this time, was still engaged in removing the last "she" bolt. At the time, or immediately after the last "she" bolt was removed by Kirk, the structure collapsed at the point where the two panels were joined, plunging Kirk from a height of some sixty or seventy feet into the Boise River, resulting in his death.

■ It appears from the evidence that each of the employees of the contractor, including Kirk, had been furnished with a safety belt to which was attached a rope to be used for security purposes. It was not only required safety procedure for an employee to use said safety belt and rope when working in high and dangerous places, but reasonable prudence dictated that such procedure should be followed by an employee. It is clear from the evidence that William Kirk, at and prior to the time of the accident, had not secured himself to the form or structure with the safety rope he was carrying with him as he had been instructed and as reasonable prudence dictated. It appears to this Court that the proximate cause of the accident was the negligent manner in which the forms were being moved by the employees of the contractor. The failure on the part of the deceased to secure himself with his safety belt and rope was negligence which contributed

to and was a proximate cause of his death.

■ An heir cannot recover under the Idaho Wrongful Death Statute, unless the deceased himself could have recovered had he not been killed. Helgeson v. Powell, 54 Idaho 667, 34 P.2d 957; Hooton v. City of Burley, 70 Idaho 369, 219 P.2d 651. In Hooton v. City of Burley, 70 Idaho at page 375, 219 P.2d at page 654, the Court stated:

"It is a general rule of law that when one knows of a danger brought about by the negligence of another, and understands and appreciates the risk therefrom and voluntarily exposes himself to such danger, he is precluded from recovering for resulting injuries.

"Further, where one claiming damages for personal injuries contributes to the injury by want of ordinary care by placing himself in a dangerous position where he might be injured, and does not exercise ordinary care in preventing injury to himself after being placed in such position, then the mere fact that another was negligent would not relieve the one injured from the effects of his contributory negligence; and if the person injured could have avoided such consequences by the exercise of reasonable care and prudence, then no recovery can be had."

■ It is the contention of the plaintiffs, inter alia, that the defendant was charged by law with the positive duty of accident prevention at the Lucky Peak Project; that the minimum requirements of this duty are set forth in the Manual, "Safety Regulations", Exhibit No. 16; and that the failure of the Government employees to effectuate such a program of accident prevention and more particularly to effectuate the provisions of the said Manual was negligence for which the defendant is liable, regardless of any possible contributory negligence on the part of the deceased. This Court is of the opinion that the duty on the part of the Corps of Army Engineers to initiate and carry out a safety program did not create a duty or an obligation of care to the deceased. It is not sufficient that some duty or obligation may have been neglected by the defendant or its servants, but it must have been some duty or obligation owed the deceased. The United States v. Marshall, 9 Cir., 230 F.2d 183. In Goodwill Industries of El Paso v. United States, 5 Cir., 218 F.2d 270, at page 272, it is stated:

"In summation, it follows that the appellant cannot recover against the United States: * * * (c) for breaches of duty which are not held actionable under the law of the state where the injury occurred."

The rules and regulations relied upon to establish a statutory duty to plaintiffs' decedent, were not passed or promulgated for the purpose of establishing a duty of care and concomitant liability on the part of the Government and its employees toward one standing in the position of the deceased. It should be noted that the "Safety Regulations" were made applicable to the contractor at the Lucky Peak Project only through the contract provisions and not by force of law. These rules, if applicable at all, were at most evidence of what was a reasonable standard of care.

"The right to bring an action for damages for an injury resulting from the breach of a statutory duty depends upon the purview of the legislature in the particular statute and the language there employed. To give a person a right of action because of a violation of statute, it is plain that the legislature must have intended him to have such right of action." 38 Am.Jur. 832, Negligence, § 162.

■ This Court is not aware of any common law duty on the part of an employer of an independent contractor to enforce a safety program in regard to the employees of an independent contractor. Nor does it appear that there is any common law duty to make inspections and remedy situations created

by an independent contractor in the course of construction on premises given over to the management and control of an independent contractor, in the absence of some non-delegable duty. 27 Am.Jur. 510, Independent Contractor, § 30; McHugh v. National Lead Co., D.C., 60 F.Supp. 17; Trecartin v. Mahony-Troast Const. Co., 18 N.J.Super. 380, 87 A.2d 349. The voluntary assumption of such a program for the welfare of all parties concerned should not create liability on the part of the defendant to the employees of contractors where the performance, or failure to perform, in no wise increases the hazard to the employees of the contractor beyond that which would otherwise have been present. Every Government employee must trace the duties of his job to some law, regulation, or order, but this does not mean that in every such case there is thereby established a duty of care on the part of the employee and the Government toward those who may be incidentally benefited if those duties are properly performed, or toward those who may be incidentally injured if those duties are not properly performed. cf. Mid-Central Fish Co. v. United States, D.C., 112 F.Supp. 792, affirmed National Mfg. Co. v. United States, 8 Cir., 210 F.2d 263, and the concurring opinion of Judge Johnsen in 210 F.2d 263, certiorari denied 347 U.S. 967, 74 S.Ct. 778, 98 L.Ed. 1108.

The fact that an employer of an independent contractor retains the right to inspect the work under construction to see that the provisions of the contract are carried out and also retains the right to stop work if they are not, is not sufficient in itself to make such employer liable for harm resulting from negligence of the independent contractor in conducting details of the work. Gallagher v. United States Lines Co., 2 Cir., 206 F.2d 177; Alexander v. Frost Lumber Industries, D.C., 88 F.Supp. 516; McDonald v. Shell Oil Co., 44 Cal.2d 785, 285 P.2d 902; Bill v. Galavara, 24 Wash. 2d 819, 167 P.2d 434.

The Court concludes that there was no act or omission on the part of an employee of the defendant creating a liability on the part of the defendant under the Federal Torts Claims Act. Assuming, arguendo, that the United States was negligent in some manner, the claim of the plaintiffs is defeated because of the contributory negligence on the part of the deceased, William Kirk, as hereinbefore stated.

In accordance with the above and foregoing, the defendant is entitled to judgment.

Counsel for the defendant shall prepare findings of fact, conclusions of law, and a proposed judgment, serve copies of the same on counsel for the plaintiffs, and submit the originals to the Court.