93 N.J. Super. 428 (1967)
226 A.2d 43
STELLA CSARANKO, ADMINISTRATRIX AD PROSEQUENDUM AND ADMINISTRATRIX OF THE ESTATE OF PAUL JOSEPH CSARANKO, DECEASED, AND STELLA CSARANKO, INDIVIDUALLY, PLAINTIFF-APPELLANT,
v.
ROBILT, INC., ROBILT CONSTRUCTION CO., THE LEVEL LINE INC., HARRY SUSSNA ENTERPRISES INC., ALLIED ERECTORS INC., AND DELCO STEEL FABRICATORS INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 12, 1966.
Decided January 17, 1967.
*430 Before Judges SULLIVAN, KOLOVSKY and CARTON.
Mr. Michael A. Cohan argued the cause for appellant (Mr. Edwin A. Kolodziej, attorney).
Mr. John B. Winter argued the cause for respondents (Messrs. Haskins, Robottom & Hack, attorneys).
PER CURIAM.
Plaintiff's decedent fell to his death on February 5, 1965 through a hole in the roof of a warehouse building owned by defendant Harry Sussna Enterprises, Inc. (Enterprises). It was being constructed on property owned *431 by Enterprises at Lakewood. In an action brought by plaintiff against Enterprises and other defendants for decedent's death, the trial court granted a summary judgment in favor of this defendant. Plaintiff appeals.
Enterprises had entered into an agreement to lease the premises, including two buildings to be erected thereon, to Level Lines, Inc. (Level). Enterprises then entered into a contract with Robilt Construction Company, Inc. (Robilt) by which Robilt agreed, for the sum of $441,000, to erect the buildings, one the office building and the other the warehouse. The contract obligated Robilt to perform all the construction work under the contract called for by the architect's plans, including the construction of railroad sidings and a water line. However, the contract provided that the contractor should not be responsible for providing and installing concrete curbs, landscaping and pavement markers, for which Enterprises agreed to be responsible. The contract also provided that the owner was to furnish and install all lamps, bulbs and tubes for exterior and interior fixtures in the buildings and install the sound system in the office building.
The complaint alleged that at the time of the accident decedent was an employee of a subcontractor performing work on the roof of the warehouse. It asserted that other subcontractors were engaged in certain steel work being performed on the project. Plaintiff charged that the steel subcontractors failed to use reasonable care in performing their work and that defendants Enterprises and Level Lines, Inc. had been negligent in the supervision and control of the premises and the construction work thereon. Particularly, plaintiff claimed that decedent's fall resulted from the failure to provide coverings on the openings or to place barriers around them.
An affidavit filed by Enterprises in support of its motion for summary judgment established that Robilt performed all the construction work in accordance with the contract and was in full and complete charge of it; that all subcontractors who performed work were employed or supervised by Robilt; *432 and that all work done upon or about the roof of the warehouse was done by Robilt's employees or those of its subcontractors.
It established further that Enterprises had no contract with any other person involving construction of the warehouse; that all money expended for the performance of the construction was paid by Enterprises and that Enterprises had nothing to do with the construction or the supervision thereof. Specifically, it showed that no one associated with Enterprises was present at the time of the accident and that none of its agents or employees had anything to do with the construction or installation of the roof where decedent fell.
Plaintiff's contention on this appeal is that Enterprises, as owner of the premises, was required by the provisions of the Construction Safety Code (1963) promulgated under the Construction Safety Act (N.J.S.A. 34:5-166 et seq.) to provide coverings over the holes or barriers around the opening through which decedent fell. Failure to do so, it claims, constitutes evidence of negligence sufficient to warrant the submission of the issue to the jury. This claim rests upon the familiar doctrine that where a penal statute, although conferring no private right of action upon an injured party, establishes a standard of conduct, its violation may constitute evidence of negligence in a civil action. See Carlo v. The Okonite-Callender Cable Co., 3 N.J. 253 (1949).
The cogence of this argument depends upon the proper interpretation to be placed upon section 3.15 of the Safety Code. That section reads as follows:

"3.15 Responsibility for Project Protection

3.15.1 Where one contractor is selected to execute the work of the project, he shall assure compliance with the requirements of this code from his employees as well as all subcontractors.
3.15.2 Where the owner selects more than one contractor to perform the work of the project, he shall be responsible or he shall designate one particular contractor to be responsible for providing the general safeguarding as well as gaining compliance with the requirements of this code from all other contractors and parties engaged in the operation of the project."
*433 Plaintiff urges that since the contract obligated the owner to complete certain phases of the work referred to therein, the owner thereby selected "more than one contractor to perform the work on the project." Enterprises is therefore responsible, the argument proceeds, for providing the safety measures prescribed by the Code inasmuch as it did not designate one particular contractor to do so. The theory is that the statute automatically renders the owner liable under such circumstances even though the owner retains no control whatsoever over the work being performed under the contract or the place where the injury occurs.
We do not agree. Ordinarily where a person engages a contractor who conducts an individual business by means of his own employees to do the work, he is not liable for the negligent acts of the contractor in the performance of the contract. Exceptions to that doctrine exist where the land owner retains control of the manner and means of doing the work which is the subject matter of the contract, where he engages an incompetent contractor and where the activity contracted for constitutes a nuisance. (Majestic Realty Associates, Inc. v. Toti Contracting Co., 30 N.J. 425 (1959))
We do not view the provisions of the Safety Code relied upon as establishing an additional exception to that doctrine. Their plain purpose is to fix responsibility for compliance with the general safety requirements on a project upon the person or contractor who asserts dominion and control over the project. These provisions are designed to insure that responsibility for project protection is fixed somewhere so that persons may be protected from injury under any circumstances.
Section 3.15.1 is designed to cover the ordinary situation where, as here, the owner engages a general contractor and the owner has no control other than a supervisory one of seeing that there is compliance with the contract. In such a case the general contractor is responsible. On the other hand, if the owner himself acts as general contractor and thereby retains such dominion and control over the project, then section *434 3.15.2 comes into operation and places on him the responsibility for the protection of all the employees. If he wishes to avoid such responsibility, this provision of the Code gives him the right to designate a particular contractor upon whom such responsibility then devolves.
Plaintiff seizes upon the fact that the owner has reserved from the contract the landscaping and paving of the lots surrounding the building and has further elected to install its own light fixtures and the sound system in the administration building. Carried to its logical conclusion, under appellant's argument, the owner of lands would be liable for injured employees of contractors and subcontractors upon his property in every construction project; he will seldom contract for the completion of such project down to the last fixtures and the last finishing touch required by the individual tenant.
Retention by the owner of the obligation to perform such relatively minor phases of the work does not amount to the selection of more than one contractor as those words are used in section 3.15.2. It does not have the effect of making the owner a general contractor for such purposes. Whether the owner has engaged a general contractor must of necessity depend upon the circumstances of the individual case. The test is whether the owner has retained any significant control or supervision over the over-all construction project.
It is evident in the present case that the owner has, in fact, engaged Robilt as the general contractor and that the contractor was in complete charge of the construction of the building. Plaintiff recognizes the fact by referring to Robilt as the general contractor in charge of the construction in his amended complaint.
It also affirmatively appears that Robilt and its subcontractors had possession and control of the building under construction and the roof on which decedent was working. Defendant Enterprises had no possession or control over the project and the area where decedent fell. Since this defendant relinquished possession and control and exercised no supervision or direction over the manner in which the work should *435 be done, there exists no common law basis for visiting liability on this defendant. Nor do the provisions of the Safety Code provide a substitute for that deficiency under the circumstances of this case. See Trecartin v. Mahony-Troast Constr. Co., 18 N.J. Super. 380 (App. Div. 1952), which construed an earlier form of the Safety Construction Code.
Since we conclude that the provisions of the Safety Code relied upon by the appellant have no application to the present case, it is unnecessary to determine the effect of N.J.S.A. 34:5-177, which provides:
"This act shall not in any way increase the burden of care ordinarily imposed by the common law of the State upon those within its jurisdiction."
We have noted that the appellant has taken this appeal without first obtaining leave pursuant to R.R. 2:2-3. However, since the matter has been fully presented and is ripe for disposition, we deem it desirable to decide the matter on the merits and grant leave for appeal.
Affirmed.