382 F.2d 263
 Jo S. EADENS, as Administratrix ad Prosequendum and General
Administratrix of the Estate of Charles E. Eadens,
Deceased, Appellant,
v.
NEW YORK SHIPBUILDING CORPORATION, a Corporation of the
State of New York.
 No. 16179.
 United States Court of Appeals Third Circuit.
 Argued March 27, 1967.
Decided Sept. 8, 1967.
 
 1
 Thomas F. Connery, Jr., Brown, Connery, Kulp & Wille, Camden, N.J., for appellant.
 
 
 2
 Thomas E. Byrne, Jr., Krusen, Evans & Byrne, Philadelphia, Pa. (Kisselman, Devine, Deighan & Montano, Camden, N.J., on the brief), for appellee.
 
 
 3
 Before HASTIE and SEITZ, Circuit Judges, and BODY, District Judge.
 
 OPINION OF THE COURT
 
 4
 BODY, District Judge.
 
 
 5
 The issue presented on this appeal is whether the lower court erred in refusing to admit into evidence certain provisions of a construction contract between appellee, New York Shipbuilding Corporation (hereinafter 'Shipbuilder'), and the United States Navy. The contract delineated and divided responsibilities between Shipbuilder and the Navy in respect to the installation, inspection, and maintenance of certain equipment and the safety of personnel engaged in the construction of a Navy destroyer.
 
 
 6
 Appellant Eadens, decedent's Administratrix, instituted a diversity action for wrongful death against Shipbuilder in the United States District Court for the District of New jersey. Shipbuilder had contracted with the Navy to construct the U.S.S. 'Joseph Strauss', a guided missile destroyer, at a shipyard in Camden, New Jersey. Decedent, Charles Eadens, a civilian worker, had been assigned to work on the destroyer; his duties included inspecting certain equipment installed by Shipbuilder and reporting to the Navy on Shipbuilder's construction progress.
 
 
 7
 Construction of the destroyer was nearing completion when decedent reported to Shipbuilder that a malfunction had developed in the ship's hydraulic system. The malfunction appeared to be located in a small carrier compartment located below the deck and housing part of a gun turret's machinery. On February 5, 1963 the decedent was working in the confined (10' by 10') compartment, inspecting and testing repairs he had made to correct the hydraulic malfunction. Apparently, a leak developed in the hydraulic pipes, and oil under great pressure began to spray over the decedent and the entire compartment. Somehow, the oil ignited and the compartment burst into flames. Decedent fled from the compartment and was found dead 30' to 40' away.
 
 
 8
 The district court charged the jury that Shipbuilder owed the decedent the legal duty of a general contractor to an employee; that Shipbuilder thus was obliged to exercise reasonable care to maintain the destroyer in a safe condition; to provide the decedent with reasonably safe working conditions; and to avoid creating or maintaining any condition upon the destroyer which reasonably could be considered dangerous.
 
 
 9
 The jury returned a verdict of no cause of action in favor of the appellee, Shipbuilder.
 
 
 10
 Appellant contended at trial that ignition of the oil was probably caused by an allegedly defective installation of an electric panel box known as an 'ABT' box. The panel box was furnished by the Navy and installed by Shipbuilder.
 
 
 11
 The contract which appellant sought to admit into evidence was several thousand pages long and highly technical in nature. Some of the contractual provisions delineated the responsibilities of Shipbuilder and the Navy in respect to the installation and maintenance of government furnished equipment, such as the ABT panel box. However, as appellant has conceded and as the trial court noted, the decedent was not a party to the contract; nor in privity to the contract; nor a third party beneficiary of the contract. Thus it is quite clear that under New Jersey law, appellant cannot sue in respect to a breach of duty which might arise out of the contract between Shipbuilder and the Navy. See Bacak v. Hogya, 4 N.J. 417, 73 A.2d 167 (1950); Miller v. Davis & Averill, Inc., 137 N.J.L. 671, 61 A.2d 253 (1948). If appellant offered the contract in order to permit its terms to determine the legal duty or standard of care owed by Shipbuilder to the decedent, the trial court correctly held the contract inadmissible.
 
 
 12
 However, appellant insists that the district court misconstrued the purpose for which the contract was offered. Appellant relies on several New Jersey cases which indicate that a contract offered by one not a party to the contract may be admitted in a negligence action 'for the purpose of evidencing the state of facts created by the contract, particularly the relationships of the parties inter sese.' Trecartin v. Mahony-Troast Const. Co., 18 N.J.Super. 380, 385, 87 A.2d 349, 354 (1952). See Csaranko v. Robilt, Inc., 93 N.J.Super. 428, 226 A.2d 43 (1967); Reid v. Monmouth Oil Co., 42 N.J.Super. 355, 126 A.2d 368 (1956).
 
 
 13
 Appellant's proposition and the cases relied upon are inapposite to the facts of this case. In Trecartin, Monmouth, and Csaranko, supra, the issue was whether the defendants in those cases had been in control of the construction sites where the respective plaintiffs had been injured. The contracts were admitted as evidence of the fact of control. Control is not at issue in the case sub judice. The district court clearly ruled that Shipbuilder was in control of the destroyer and of the carrier compartment where decedent was fatally burned; and the court charged the jury that Shipbuilder owed the decedent a duty to maintain the destroyer, the compartment, and the machinery therein in a reasonably safe condition. Nor did the court's charge to the jury imply in any way that Shipbuilder's contract with the Navy could absolve Shipbuilder of its duty to the decedent. Appellant received a favorable instruction on the relationships of the parties inter sese; the contract was not necessary to evidence such relationships. Indeed, the length and technical complexity of the contract might very well have only created confusion in the minds of the jurors. We find ourselves in agreement with the conclusions of the district court.
 
 
 14
 The judgment of the district court will be affirmed.