139 N.J. Super. 110 (1976)
352 A.2d 613
EDWARD DOLOUGHTY AND DIANE DOLOUGHTY, HIS WIFE, PLAINTIFFS,
v.
BLANCHARD CONSTRUCTION COMPANY, PAVARINI CONSTRUCTION CO., AND NEW JERSEY BANK, N.A., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 7, 1976.
*114 Mr. William C. Colacino, Jr. for plaintiffs (Messrs. Breslin & Breslin, attorneys).
Mr. George J. Kenny for defendant Blanchard Construction Co. (Messrs. McElroy, Connell, Foley & Geiser, attorneys).
Mr. Murray R. Miller for defendant Pavarini Construction Co. (Messrs. Bennett & Bennett, attorneys).
Mr. Kevin M. O'Halloran for defendant New Jersey Bank (Messrs. Morrison & Griggs, attorneys).
PRESSLER, J.C.C. Temporarily Assigned.
This summary judgment motion requires determination of the scope of the indemnity clause of a contract between the general contractor of a building construction project and a subcontractor, by which the subcontractor undertook to save the general contractor harmless in respect of his, the subcontractor's, own *115 acts or omissions. The specific question raised is whether and, if so, to what extent the general contractor may be barred from enforcing that indemnity provision where his negligence is concurrent with that of the subcontractor in causing the injury complained of.
The undisputed facts, as they appear from the pleadings, stipulations and depositions, may be simply stated. Defendant New Jersey Bank (bank), the owner of premises in West Paterson, New Jersey, had contracted with the defendant Blanchard Construction Co. (Blanchard) as general contractor for the construction of a new ten-story bank building in West Paterson. The concrete subcontract was let by Blanchard to defendant Pavarini Construction Co. (Pavarini), which retained responsibility for constructing the concrete columns, subcontracting the concrete floor construction to Ceco Corporation. Plaintiff Edward Doloughty, an employee of Ceco, was responsible for levelling the floor decks preparatory to the pouring of concrete. Doloughty, having been instructed by his own foreman to help the Pavarini employees when necessary to expedite his own work, was injured when he fell from the unenclosed, partially completed third-floor deck onto a concrete balcony below while attempting to assist a Pavarini employee in straightening a vertical concrete column erected almost at the edge of the deck. He brought this negligence action against the bank,[1] Blanchard and Pavarini, claiming that each of them failed to provide him with a safe place to work by having failed to have provided guardrails and other necessary protections around the open exterior perimeter of the building during the progress of the work. It is conceded by defendants that no such protective devices had in fact been furnished. Blanchard crossclaimed against Pavarini, asserting, alternatively, *116 a right to contribution and a right to indemnification,[2] and brings this pretrial motion for a summary judgment against Pavarini seeking an adjudication, as a matter of law, of Pavarini's obligation under the contractual indemnity provision to assume both its defense to this action and responsibility to pay any judgment which plaintiff might recover against it.
As a matter of well-settled legal doctrine, it is clear that an indemnity provision is to be construed in accordance with the rules for the construction of contracts generally, and hence that the judicial task is to ascertain the intention of the parties from the language used, the surrounding circumstances and the objects sought to be attained by the parties under their agreement. It is also a well-settled principle in this jurisdiction that there is no essential public policy impediment to an indemnitor undertaking to indemnify the indemnitee in respect of the indemnitee's own negligence. That principle derives from the judicial recognition that ordinarily the financial responsibility for the risk of injury during the course of a construction project is shifted in any event by the primary parties to their insurance carriers and the parties ought therefore to be free to determine how the insurance burdens will be distributed between them and who will pay for specific coverage for specific risks. The impact of the indemnity agreement between owner and contractor and contractor and subcontractor is therefore, in practical effect, the parties' allocation between themselves of the total required insurance protection for the project.
The first question, then, is whether it can be fairly concluded from the relevant indicia that the parties contemplated that the indemnitee would be indemnified where by *117 reason of his own negligence he is either solely or concurrently responsible for the injury. See generally, George M. Brewster & Son v. Catalytic Constr. Co., 17 N.J. 20, 32-33 (1954); Longi v. Raymond-Commerce Corp., 34 N.J. Super. 593, 603-604 (App. Div. 1955); Stern v. Larocca, 49 N.J. Super. 496, 501-508 (App. Div. 1958); Cozzi v. Owens Corning Fiberglas Corp., 63 N.J. Super. 117, 121-125 (App. Div. 1960); Polit v. Curtiss Wright Corp., 64 N.J. Super. 437, 442 (App. Div. 1960); Buscaglia v. Owens-Corning Fiberglas, 68 N.J. Super. 508, 515 (App. Div. 1961), aff'd 36 N.J. 532 (1962); Mayer v. Fairlawn Jewish Center, 38 N.J. 549, 559-569 (1962); Bethlehem Steel Corp. v. K.L.O. Weld. Erectors, 132 N.J. Super. 496, 499 (App. Div. 1975).
First resort in making that determination must be, of course, to the applicable contractual provisions themselves. An analysis of the recent case law, both in this and other jurisdictions, indicates that indemnity provisions in construction contracts are generally of one of two types. The first of these is a broad undertaking by an indemnitor to indemnify the indemnitee in respect of any damage or injury which occurs during or in connection with or as a result of the indemnitor's performance of the contracted work. Such undertakings are usually construed, consistent with what appears to be the intent of the parties, as imposing the exclusive obligation upon the indemnitor both to defend and to respond in damages irrespective of fault and irrespective of the absence of an express undertaking to indemnify the indemnitee for his own negligence. The criterion for determining the applicability of this type of indemnity clause is thus, in essence, work-relatedness without reference at all to the potential or actual common-law liability of either the indemnitor or the indemnitee to the claimant. Such an indemnity clause may, therefore, be relied upon by the indemnitee even if he is solely negligent and, a fortiori, if he is concurrently negligent. Typical language which has been judicially determined to express this broad, work-related indemnity *118 agreement includes such phrases as all risk of loss, damage or injury "from any action or operation under the contract or in connection with the work" (Polit v. Curtiss Wright Corp., supra 64 N.J. Super. at 441); "all loss or damage from accidents which may occur to any person or persons, by or on account of the prosecution of the work" (Stern v. Larocca, supra 49 N.J. Super. at 498); "arising from accidents to the Contractor, his agents or employees, whether occasioned by said Contractor or his employees or by Owner or his employees or any other person" (Cozzi v. Owens Corning Fiber Glass Corp., supra at 63 N.J. Super. 122); "all liability claims * * * arising from accidents to persons or property occasioned by * * * [contractor]" (Buscaglia v. Owens-Corning Fiberglas, supra 68 N.J. Super. at 513). See also, in accord, Graver Tank & Mfg. Co. v. Fluor Corp. Ltd., 4 Ariz. App. 476, 421 P.2d 909 (Ct. App. 1967) (loss or damage "arising out of the services, labor, equipment and materials furnished" and claimed "in connection with or arising out of the performance of [the] work"); Harpeth Valley Utilities Dist. v. Due, 225 Tenn. 181, 465 S.W.2d 353 (Sup. Ct. 1971) ("arising out of the work undertaken by the Subcontractor, its employees, agents or its subcontractors, and arising out of any other operation no matter by whom performed * * *"). And see generally, 143 A.L.R. 312 (1943); 27 A.L.R.3d 663 (1969).
The second type of indemnity provision is one which is limited to risk of loss or damage resulting from the negligence or fault of the indemnitor. That limitation is ordinarily expressed not only by a specific reference to the indemnitor's fault or negligence, but also by reference to loss or damage arising from the indemnitor's "acts or omissions." While that language does not appear to have been construed in this context in New Jersey,[3] it is generally construed *119 in other jurisdictions as necessarily and inevitably implying a negligent act or omission, since the phrase "act or omission" in ordinary legal usage bespeaks culpability and if the concept of fault were not intended to have been implied, the parties could easily have opted for a form of expression which is not customarily fault-oriented. See, e.g., Salemi v. Duffy Constr. Corp., Ohio App., 31 Ohio Opin.2d 482, 197 N.E.2d 397, 401 (Ct. App. 1964), rev'd on other grounds 3 Ohio St.2d 169, 209 N.E.2d 566 (Sup. Ct. 1965), cert. den. 383 U.S. 927, 88 S.Ct. 933, 15 L.Ed.2d 847 (1966), the court there noting the availability, had the parties otherwise intended, of such language as "arising out of the performance" of the work. And see, Seaboldt v. Pennsylvania R. Co., 290 F.2d 296 (3 Cir.1961); Pennsylvania R. Co. v. Stauffer Chemical Co., 255 A. 2d 696 (Del. Super. Ct. 1969). And see cases collected in Annotation 27 A.L.R.3d, supra, at 746 to 750.
The indemnity agreement here is clearly of the second and more restrictive type, reading as follows:
It is understood and agreed that by the acceptance of this order Subcontractor hereby assumes the entire responsibility and liability for any and all damage to persons or property caused by or resulting from or arising out of any act or omission on the part of the Subcontractor under or in connection with this subcontract or the prosecution of the work thereunder, and shall indemnify and save harmless the Contractor and owner from and against any and all loss or expense, including counsel fees, which they or either of them may suffer or pay as a result of claims or suits due to or arising out of any and all such damage, whether real or alleged, and the subcontractor, if requested, shall assume and defend, at his own expense, any such suits.
Blanchard advances two arguments in urging that the clause here should not be construed as limited to the indemnitor's fault. Initially, it argues that the subject of the indemnity is two-fold  first, acts or omissions under or in connection *120 with the subcontract, and second, and entirely independent of the first, any damage resulting during the performance of the work. That construction, however, contradicts the plain sense and meaning as well as the grammatical imperative of the sentence. The operative phrase "act or omission on the part of the subcontractor" clearly qualifies each of the ensuing, disjunctively stated circumstances. That is, what is indemnified against is such an act or omission under the subcontract or such an act or omission in connection with the subcontract or such an act or omission in connection with the prosecution of the work. Blanchard further points out that its indemnification of the bank is expressly limited to its "negligent acts or omissions" and hence that the absence of the "negligent" qualifier in the Pavarini subcontract should be deemed as expressing an intention that Pavarini's acts or omissions not necessarily be negligent. The short answer to this is first, that Pavarini is not a party to the owner-contractor contract and cannot be bound by its language; that Blanchard drew the Pavarini contract and any ambiguity ought to be resolved against it, and finally, that there is no other contractual language or attendant circumstance as between Blanchard and Pavarini as would justify depriving the phrase "act or omission" of its customary fault-implying connotation. The point is that the parties could easily have opted for a broad-scope indemnity provision which would clearly have fixed the entire obligation upon Pavarini, but that they did not.
The next question, then, is the extent to which and the circumstances pursuant to which the benefit of the indemnity clause may still be available to Blanchard. Of course, if Blanchard were solely negligent in causing plaintiff's injury, the indemnity would not be available to it since it is based on the prerequisite condition of Pavarini being at fault. The more difficult problem is to ascertain whether it may be fairly concluded that the parties intended the indemnity obligation to attach if both were at fault. In ascribing intention in such circumstances, the courts of both *121 this and other jurisdictions have generally relied on the qualitative distinctions in the character of the parties' respective negligence which underpin common-law or implied indemnity and hence have customarily held that where the subject of the indemnity is the act or omission of the indemnitor, the indemnity agreement will protect a negligent indemnitee only if his negligence is passive or secondary vis-a-vis an indemnitor whose negligence is active or primary, but that if their negligence is concurrent and that of the indemnitee is joint, active, primary or independent, the indemnity is not applicable and the indemnitee is left only with his statutory right of contribution from a joint tortfeasor. See, e.g., Longi v. Raymond-Commerce Corp., 34 N.J. Super. 593 (App. Div. 1955); Mayer v. Fairlawn Jewish Center, 38 N.J. 549 (1962). Cf. Stern v. Larocca, supra, 49 N.J. Super. at 503-505. And see cases collected in Annotation, 27 A.L.R.3d., op cit. supra. See also, as to the reliance on these distinctions in determining the existence of a right to common-law or implied indemnity, Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55 (1960); Hut v. Antonio v. Guth, 95 N.J. Super. 62 (Law Div. 1967); Public Service Elec. and Gas Co. v. Waldroup, 38 N.J. Super. 419 (App. Div. 1955).
The concepts of active as opposed to passive negligence, and primary as opposed to secondary negligence, are in the nature of legal fictions devised to relieve, in effect, one of two tortfeasors from liability where both have breached a duty owed to the plaintiff but where, as between them and for equitable reasons, one should bear the burden for the entire loss, such as where the breach by one is "culpable" and the breach by the other is only "technical" or "constructive." See, e.g., Mayer v. Fairlawn Jewish Center, supra, 38 N.J. at 559. It must be recognized, however, that these concepts, constructed and labeled in order to accomplish what is commonly agreed to be a just and equitable result, tend nevertheless, like all legal fictions, to become increasingly technical, *122 continuously qualified, and ultimately more formally categorical than substantively meaningful.
It seems to this court that the essential purpose of these concepts can be more directly and usefully articulated where, as here, the respective obligations and responsibilities of the parties inter se are largely contractual and are largely imposed and assumed by agreement from which their intentions as to assumption inter se of liability for injury and loss can be inferred. Thus, plaintiff here claims that each of the defendants failed in the independent duty which each owed to him, as a matter of common-law negligence principles, to provide him with a safe place to work, and that that failure by each caused his injuries. If he is correct, and his theory of liability against each is certainly viable, see, e.g., Piro v. Public Service Elec. & Gas Co., 103 N.J. Super. 456 (App. Div. 1968), aff'd o.b. 53 N.J. 7 (1968), and see discussion infra in respect of the Construction Safety Code, then each is liable to him. But inter se, their status is quite different and their relationship to each other as expressed in their contractual undertakings, trade custom and usage, and in their course of conduct in respect of the job and each other may well bespeak an intention that one of them be charged with the full and entire obligation. The test need not be based on how, definitionally, the failure of duty of each is categorized, whether active or passive or primary or secondary. What that categorization seeks to achieve is simply a determination of whether or not, considering all of the relational circumstances, the indemnitee reasonably expected as part of his bargain with the indemnitor that the duty he failed to perform and on which his liability to plaintiff is predicated would be performed by the indemnitor. Then, of course, as between themselves, the indemnitee should be relieved of responsibility for his breach of duty vis-a-vis plaintiff since the indemnitor's obligation to indemnify in that situation would clearly have been within the parties' contemplated bargain. If, on the other hand, the duty to plaintiff breached by the indemnitee was not originally or *123 independently that of the indemnitor and was not otherwise shifted to him by the relational circumstances between them, or if the indemnitee's expectation of the indemnitor's performance of that duty was not otherwise reasonable, the indemnitee's liability to plaintiff cannot be fairly deemed to have been within the intended coverage of an indemnity agreement limited to the indemnitor's acts or omissions.
Whether Blanchard reasonably assumed that it was Pavarini's primary obligation to provide the missing safeguards which allegedly caused the accident here, requires findings of fact which can be determined only at trial. These questions cannot be resolved, as Blanchard argues, on this summary judgment motion. First, the Construction Safety Act, N.J.S.A. 34:5-166 et seq., imposes upon all employers engaged in construction activities the obligation to "comply with all requirements reasonably necessary for the health and safety of employees and the general public." N.J.S.A. 34:5-168. Those requirements are, pursuant to that statute, set forth in the Construction Safety Code, N.J.A.C. 12:180-1.1 et seq., promulgated in 1968 and hence applicable to this 1972 accident. The Code specifically places the primary responsibility for compliance with its requirements on the general contractor, N.J.A.C. 12:180-3.15.1 providing that "where one contractor is selected to execute the work of the project, he shall assure compliance with the requirements of this chapter from his employees as well as all subcontractors." N.J.A.C. 12:180-3.2, however, imposes upon all "employees, owners, contractors, subcontractors, superintendents or foremen in charge" the obligation not to "direct or permit an employee to work under conditions which are not in compliance" with the Code. It is further clear that the absence of guardrails and toeboards to protect the open perimeter of the floor decks was a violation of the Code and hence both Blanchard and Pavarini may be liable to plaintiff. See N.J.A.C. 12:180:4.16 (guardrails and safety rails), N.J.A.C. 12:180-4.17 (toeboards), and N.J.A.C. 12:180-4.43 (protection of openings). The question, then, is *124 whether the agreement between the parties and its intended or actual implementation shifted the primary burden for providing these necessary protective devices from Blanchard to Pavarini. If it did, then Pavarini's failure must be deemed, as a matter of the parties' intention, to entitle Blanchard to invoke the indemnity clause despite its own Code and common-law obligation to have assured Pavarini's compliance by inspection, demand and, if appropriate, rectification of Pavarini's omission. Cf. Mayer v. Fairlawn Jewish Center, supra.
The contract does not on its face resolve that question. Pavarini undertook in this regard to "provide hoisting, scaffolding and safeguards as required for * * * [his] work" and to "provide all safeguards for the concrete structures as required by all authorities having jurisdiction." Blanchard, however, expressly retained sole responsibility for "barricade fences and protection except as required for concrete work." Were, then, the protective devices here a safeguard for the concrete work or not? That answer requires factual findings based on proofs not before the court on this motion. Relevant considerations would be custom and usage in the construction business in respect of who ordinarily furnishes these particular safeguards, and trade understanding of the usual meaning of what "concrete-work protection" includes. There is also no indication at this stage of the case as to whether Pavarini was in exclusive control of the unenclosed decks during that phase of construction, a circumstance which might well support the conclusion that it was his primary responsibility to provide these safeguards. Cf. Trecartin v. Mahony-Troast Constr. Co., 18 N.J. Super. 380 (App. Div. 1952); Piro v. Public Service Elec. & Gas Co., 103 N.J. Super. 456 (App. Div. 1968); Czaranko v. Robilt, Inc., 93 N.J. Super. 428 (App. Div. 1967); Wolczak v. National Elec. Products Corp., 66 N.J. Super. 64 (App. Div. 1961); Schwartz v. Zulka, 70 N.J. Super. 256 (App. Div. 1961), mod. 38 N.J. 9 (1961); Gallas v. Public Service Elec. & Gas Co., 56 *125 N.J. 101 (1970); Wellenheider v. Rader, 49 N.J. 1 (1967). In this context it would be relevant to prove, among other things, whether other trades, unrelated to Pavarini's subcontract, were working on or around the unenclosed decks during that stage of construction and whether Pavarini's contract involved any of the work to be done in ultimately constructing the exterior walls of the building. It is also relevant to note that Pavarini's foreman, on deposition, testified that Pavarini had provided safeguards for interior deck openings, i.e., the elevator shaft holes, but not for the exterior openings. Since there is no suggestion by any of the parties that there was any cause of the accident other than the failure of guardrails or similar protections, determination at trial as to which of the defendants had the primary obligation to provide the missing safety devices should be dispositive of the indemnity issue.[4]
The issues will clearly have to be submitted to the jury on special interrogatories. It should be pointed out that defendants have alleged that plaintiff was contributorily negligent. If he is found to be, the jury will still have to determine if there was a breach of duty to him by either defendant and if so, which had the primary obligation to perform that duty. If it was Pavarini, then Blanchard, of course, will be entitled to judgment on its crossclaim to the extent of any damages it might sustain, either by way of the cost of defending this action or paying the judgment in favor of plaintiff or both.
For the reasons herein stated, Blanchard's motion for summary judgment is denied.
NOTES
[1] The Bank's motion for summary judgment dismissing the complaint against it was granted on plaintiff's concession that under the undisputed facts, its theory of negligence was an insufficient basis for a finding of liability on the part of the owner.
[2] It is not clear from the crossclaim itself whether Blanchard was relying on an implied or common-law indemnity or on the contractual indemnity or both. The motion, however, is based on the contract and, in any case, for the reasons herein expressed, its right to common-law indemnity is no greater than its indemnity right under the contract.
[3] The phrase "act or omission" was the operative language in the indemnity agreement before the court in Trecartin v. Mahony-Troast Constr. Co., 21 N.J. 1 (1956). The agreement was not there construed, however, because the appeal was dismissed on procedural grounds and the merits of the controversy not reached.
[4] It is noted that Pavarini obtained insurance coverage in respect of its obligation under the indemnity agreement, that coverage designated in the certificate of insurance as a contractual hazard "as per hold harmless agreement on reverse side." The rider then restates the indemnity clause verbatim. Thus, both Pavarini's and its carrier's obligation under the indemnity agreement are clearly coextensive.