203 N.J. Super. 451 (1985)
497 A.2d 516
LOUISE MILTZ, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT
v.
BORROUGHS-SHELVING, A DIVISION OF LEAR SIEGLER, INC., DEFENDANT-RESPONDENT AND CROSS-APPELLANT, AND RITE-HITE, INC., DEFENDANT-RESPONDENT AND JOHN O'NEILL, INDIVIDUALLY AND T/A NATIONAL ERECTION SERVICE, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 11, 1985.
Decided July 18, 1985.
*454 Before Judges MICHELS, PETRELLA and BAIME.
*455 Alan H. Sklarsky argued the cause for appellant (Tomar, Parks, Seliger, Simonoff & Adourian, attorneys; Mr. Sklarsky, of counsel and on the brief).
Bruce M. Gunn argued the cause for respondent Borroughs-Shelving, a division of Lear Siegler (Martin, Crawshaw & Mayfield, attorneys; Mr. Gunn, of counsel and on the brief).
Ralph A. DeSevo argued the cause for respondent Hite-Rite, Inc. (DeSevo, Cerutti & Lombardi, attorneys; Mr. DeSevo, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiff Louise Miltz appeals from an order of the Law Division that denied her motion to amend her complaint to include a cause of action based on strict liability and from a judgment of involuntary dismissal entered at the close of her proofs against defendants Borroughs-Shelving, a division of Lear Siegler, Inc. (Borroughs), and Rite-Hite, Inc. (Rite-Hite). Borroughs cross-appeals from the judgment entered in favor of plaintiff and against defendant John O'Neill, individually and t/a National Erection Service (National Erection) on a molded jury verdict that fixed damages and prejudgment interest in the sum of $110,061.37.[1]
The facts giving rise to this appeal are not substantially in dispute. On September 23, 1980, plaintiff commenced her employment as an assistant manager of the men's and shoe departments at Montgomery Ward's Jefferson Ward store in Cherry Hill, New Jersey. On January 11, 1981, plaintiff fell and sustained injury on a set of metal stairs leading from the store's sales area to the shoe stock room. She testified that just prior to the fall she had gone "up on the [stock room's] mezzanine" and had picked up five boxes of low men's sneakers. *456 She then "start[ed] coming down the stairs and they started to vibrate and ... [she] felt [herself] going forward and [she] put [her] arm out and there was nothing to hold onto so [she] pulled back and held onto the step ... there was no rail or anything." Plaintiff says that as a result of her fall she "tore her shoulder," causing "permanent spasms and weaknesses in her arm, a permanent 25% physical disability." Plaintiff has received workers' compensation benefits from her employer, Jefferson Ward.
At trial plaintiff attributed the cause of her fall to the improper installation of the stairs during the renovations immediately preceding the opening of the store in October 1980. She testified that prior to her fall the stairs lacked handrails and that they vibrated because they were not properly bolted to the wall under the top steps. Despite a series of employee complaints and efforts to have the stairs repaired, the store's owner, the Montgomery Ward Corporation, did not rectify the condition of the stairs until after plaintiff's fall.
The proofs further show that prior to the opening of the store Montgomery Ward entered into a contract with Borroughs-Shelving for the erection of shelving, the installation of stairs, and the construction of a mezzanine in the store's storage area. Borroughs manufactured and supplied the components for the shelving but subcontracted the labor portion of the installation to National Erection. Borroughs also subcontracted both the manufacture and the installation of the stairs and mezzanine to Rite-Hite. Rite-Hite provided the components for the mezzanine and the stairs but, like Borroughs, subcontracted the labor portion of the installation to defendant National Erection.
National Erection began construction of the stairs and mezzanine in early September, 1980. During the construction Arnold Hoehn, the national operations manager of Borroughs, and Jerry Mintz of Rite-Hite visited the Cherry Hill store "from time to time" to observe the progress of the work. Paul Gress, *457 an installation supervisor for Montgomery Ward, also made a series of "walk-through inspections" of the Cherry Hill site with John O'Neill, president of National Erection, and Durwood Daniels, a superintendent of National Erection. At the time of Gress's final inspection National Erection's work was 95 percent complete. However, certain components, including kickplates and handrails for the stairs in the shoe stock room area, had not yet been delivered. O'Neill testified that the handrails were delivered on October 10, 1980, and that his workers installed them. However, Gress testified that while the handrails may have been delivered to the store, he had to hire a different contractor subsequent to plaintiff's fall to install the handrails and complete the stairs.
At the completion of plaintiff's proofs the trial court concluded that reasonable minds could not differ as to the facts surrounding the accident and that there was no evidence of negligence on the part of either Borroughs or Rite-Hite. The trial court found that neither Borroughs nor Rite-Hite could be held liable as a matter of law for the alleged negligence of National Erection in the performance of its contract for the construction or installation of the stairs, including the handrails. The trial court thereupon granted the motions of Borroughs and Rite-Hite for judgment. At the conclusion of all the proofs the jury found that National Erection was negligent and that its negligence was the proximate cause of the accident. A jury subsequently determined the amount of damages to be awarded, and the trial court thereupon molded the jury verdict in favor of plaintiff and against National Erection in the amount of $110,061.37. This appeal followed.
Plaintiff contends that the trial court erred in denying her motion to amend the pleadings, in not permitting her to submit proof on the issue of negligent inspection of the stairs, and in holding that Borroughs and Rite-Hite could not be held liable for the negligent installation of the stairs by National Erection. We are entirely satisfied from our view of the record in light of the arguments presented that the trial court properly denied *458 plaintiff's motion to amend the pleadings to include the additional theories or causes of action against Borroughs and Rite-Hite and properly granted the motions for judgments of involuntary dismissal in favor of both of these defendants. See R. 2:11-3(e)(1)(E). However, further comment is necessary with respect to some of plaintiff's contentions.

I.
Plaintiff first claims that the allegation in the amended complaint that "the injuries sustained by [her] were proximately caused by defendant ... in its failure to install said stairs properly" was sufficient to place Borroughs on notice of plaintiff's intention to assert a theory based on Borroughs's negligent inspection of the stairs. In our view this argument is clearly without merit. While our rules of court require that all pleadings be construed liberally in the interest of justice, R. 4:5-7, a party's pleadings must nonetheless fairly apprise an adverse party of the claims and issues to be raised at trial. See Jersey City v. Hague, 18 N.J. 584, 601-603 (1955); Melone v. Jersey Central Power & Light Co., 18 N.J. 163, 174 (1955). To be adequate the pleadings must contain a claim for relief, a statement of the facts on which the claim is based showing that the pleader is entitled to relief, and a demand for judgment for the relief to which the pleader deems him or herself entitled. R. 4:5-2.
Here the plaintiff's complaint and amended complaint failed to make the necessary factual allegations and claims for relief sufficient to sustain a cause of action based on a negligent inspection theory. See Schantz, et al. v. Rachlin, 101 N.J. Super. 334, 344 (Ch.Div. 1968), aff'd o.b., 104 N.J. Super. 154 (App.Div. 1969). Borroughs contracted the manufacture and installation of the stairs to Rite-Hite and could not be held liable for either Rite-Hite's or National Erection's negligence in the course of the stairs' construction. See Majestic Realty Associates, Inc. v. Toti Contracting Co., 30 N.J. 425, 431 (1959). *459 There is also no indication in the pleadings (nor elsewhere in the record) that Borroughs had a duty independent of its contract with Montgomery Ward to inspect the stairs during their installation. Any inspection of the job site would have constituted a duty voluntarily assumed by Borroughs independent of its contractual obligation to install the stairs and any claim of negligence occurring during that inspection should have been pleaded separately from plaintiff's other allegations. In our view the trial court did not abuse its discretion by finding that Borroughs's negligent inspection theory was not properly raised by the pleadings.
Moreover, contrary to plaintiff's further claim "substantial justice" cannot serve as a basis for permitting the amendment of the pleadings to include a negligent inspection theory. Pursuant to R. 4:9-1 the trial courts, in their discretion, should permit parties to amend their pleadings "freely ... in the interest of justice." R. 4:9-1. See Grobart v. Society for Establishing Useful Mfrs., 2 N.J. 136, 146-147 (1949); Hudson Foam Latex Products, Inc. v. Aiken, 82 N.J. Super. 508, 517 (App.Div. 1964); Fluoro Electric Corp. v. Smith Transport Ltd., 58 N.J. Super. 287, 294 (App.Div. 1959), aff'd, 32 N.J. 277 (1960). Nevertheless, "[w]hile motions to amend pleadings are required by the express terms of the rule to be liberally granted, there remains ... a necessary area of judicial discretion in denying such motions where the interests of justice require." Wm. Blanchard Co. v. Beach Concrete Co., Inc., 150 N.J. Super. 277, 299 (App.Div. 1977), certif. den., 75 N.J. 528 (1977).
In the circumstances of this case it is clear that the trial court properly exercised its discretion by barring plaintiff from asserting her negligent inspection theory. Plaintiff's original pleadings only asserted two theories of negligence against Borroughs: Borroughs's failure to properly install the stairs and its failure to warn of a dangerous condition. Plaintiff failed to expand on these allegations during discovery and gave *460 the following response to Borroughs's interrogatory concerning the basis for the allegations:
Defendant failed to install staircase properly, did not have safety handrails, and did not warn persons using same of the dangerous condition, stairs were not bolted down.
Plaintiff amended neither her pleadings nor her answers to interrogatories and did not raise the negligent inspection theory until trial. Questions during depositions concerning Rite-Hite's and Borroughs's inspections of the stairs were insufficient to place Borroughs on notice of the plaintiff's intent to pursue her personal injury claim on a theory of negligent inspection. Contrary to plaintiff's assertion she had ample opportunity between Arnold Hoehn's deposition on April 25 and the trial date of September 14 to amend the pleadings to assert such a claim. Moreover, as Borroughs argued, if Borroughs's counsel had known plaintiff intended to raise a negligent inspection theory, he "certainly would have prepared this case differently." Borroughs's counsel did not have any opportunity either to conduct discovery on the issue raised or to retain an expert to render an opinion on the propriety and scope of any inspection of the stairs by Borroughs.
As a result of plaintiff's lengthy and unexcused delay in giving notice to Borroughs, the trial court's ruling did not cause a manifest injustice and did not constitute an abuse of discretion. As this court stated in Branch v. Emery Transportation Co., 53 N.J. Super. 367, 375 (App.Div. 1958), "the progressive judicial policy in permitting amendments, generally, is not intended to afford a refuge to languid or dilatory litigants.... The court should not permit itself to be imposed upon."
Accordingly, the trial court properly denied plaintiff's motion to include a theory of negligent inspection as a basis for a claim against Borroughs.

II.
Plaintiff's next charge that the trial court erred as a matter of law by rejecting the theory that Borroughs should be *461 held liable for the failure of its subcontractor, National Erection, to provide Montgomery Ward with a non-defective and safe product in conformance with the New Jersey building code, see N.J.S.A. 52:27D-119 et. seq.; N.J.A.C. 5:23-1 et. seq., is equally without merit. Plaintiff would carve out a new exception to the general rule that "ordinarily where a person engages a contractor, who conducts an independent business by means of his own employees ..., he is not liable for the negligent acts of the contractor in the performance of the contract." Majestic Realty Associates, Inc. v. Toti Contracting Co., supra, 30 N.J. at 431; Terranella v. Union Bldg. & Construction Co., 3 N.J. 443, 446-447 (1950). See Mayer v. Fairlawn Jewish Center, 38 N.J. 549, 555 (1962); Marek v. Professional Health Services, Inc., 179 N.J. Super. 433, 441 (App.Div. 1981), certif. granted, 88 N.J. 470 (1981), appeal dismissed, 93 N.J. 232 (1981); Hill v. Newman, 126 N.J. Super. 557, 562 (App.Div. 1973), certif. den., 64 N.J. 508 (1974); Csaranko v. Robilt, Inc., 93 N.J. Super. 428, 433 (App.Div. 1967); Gibilterra v. Rosemawr Homes, 32 N.J. Super. 315, 319 (App. Div. 1954), aff'd, 19 N.J. 166 (1955). Certain well-recognized exceptions to this rule have come to be accepted, such as where the contracting party (a) retains control of the manner and means of doing the work subject to the contract, (b) engages an incompetent contractor, or (c) contracts for the performance of an inherently dangerous activity. Majestic Realty Associates, Inc. v. Toti Contracting Co., supra, 30 N.J. at 431; Terranella v. Union Bldg. & Construction Co., supra, 3 N.J. at 446-447. The most commonly accepted rationale for insulating employers or contractors from liability
is that, since the employer has no right of control over the manner in which the work is to be done, it is to be regarded as the contractor's own enterprise, and he, rather than the employer, is the proper party to be charged with the responsibility for preventing the risk, and administering and distributing it. [Prosser and Keeton on Torts, § 71, at 509 (5th Ed. 1984)].
Borroughs contracted with Montgomery Ward to construct shelving, stairs, and a mezzanine in the storage area of Montgomery Ward's planned Jefferson Ward store. Borroughs *462 manufactured the shelving but subcontracted its installation to National Erection. Borroughs also subcontracted both the manufacture and installation of the stairs and mezzanine to Rite-Hite. Rite-Hite manufactured the components for the stairs and mezzanine but, like Borroughs, subcontracted the installation of the stairs and mezzanine to National Erection.
First, it should be noted that Borroughs entered into a direct contractual relationship with National Erection only for purposes of installing the shelving. National Erection installed the stairs and mezzanine in fulfillment of its contractual arrangement with Rite-Hite. Therefore, even if one of the well-established exceptions to the rule precluding contractor liability for its subcontractor's negligence did apply, the lack of a contractual relationship between Borroughs and National Erection with regard to installation of the stairs insulates Borroughs from liability for National Erection's negligence.
Moreover, even if we were to make the dubious assumption that Borroughs could be held liable for National Erection's negligence in the installation of the stairs, none of the well-recognized exceptions to the rule protecting contractors from liability for their subcontractor's negligence apply. Montgomery Ward, not Borroughs, owned the premises where National Erection performed its work, and National Erection, along with Montgomery Ward, owned or controlled the work site. Plaintiff does not assert, and there is no proof in the record to suggest, that Borroughs engaged an incompetent contractor or that installing the stairs was an inherently dangerous activity.
Additionally plaintiff, referring to her expert's testimony that the stairs as originally installed failed to comply with New Jersey's building code because they lacked handrails, nevertheless asserts that public policy considerations and Borroughs's control over the stairs' installation require that liability be imposed on Borroughs. Plaintiff first argues that Borroughs, as "the entity who drew up the blueprints for the remodeling at the Cherry Hill store," was "the one in the best position to *463 determine that the building code was being violated." However Borroughs, by delegating the installation of the stairs to Rite-Hite and National Erection, clearly relinquished its dominion and control over the project, including its duty to monitor the installation of the stairs to ensure that they complied with state and local building regulations. Cf. Csaranko v. Robilt, supra, 93 N.J. Super. at 433. National Erection, as the party which installed the stairs, and Montgomery Ward, as the owner of the premises, were in the best position to ensure that the stairs as installed complied with the state's building code. Plaintiff has already recovered from these parties. Imposing liability on Borroughs (or Rite-Hite, for that matter) would violate the well-established public policy of imposing liability for negligence on the party most able to prevent, administer, and distribute the risk. See Prosser and Keeton, supra, § 71, at 509.
Plaintiff also argues that public policy dictates that contractors should be barred from delegating to others, such as subcontractors, the duty not to violate the state building code. As plaintiff notes, in a growing number of situations the law has come to view "`a person's duty as so important and so preemptory that it will be treated as nondelegable'" and therefore not subject to the general rule protecting employers from liability for their contractors' negligence. Marek v. Professional Health Services, Inc., supra, 179 N.J. Super. at 441 (quoting Harper and James, The Law of Torts, § 26.11, at 1406 (1956)). In Marek v. Professional Health Services, Inc., supra, we commented upon the erosion of the contractor/subcontractor nonliability doctrine:
Dean Prosser has said that American courts "have continued to repeat the `general rule' of non-liability with exceptions, whose very number is sufficient to cast doubt upon the validity of the rule." Prosser, Torts (4 ed. 1971) § 71 at 468. He observes that the Restatement, Torts, "has devoted no less than twenty-four sections" to the topic, embodying the general principle and some 23 separate exceptions. Id. at 469. Another noted authority contends that the defense meets "mounting disfavor .. . [and] has become suspect and .... there are those who would do away with it entirely." Harper and James, The Law *464 of Torts, § 26.11 at 1403 (1956). The Reporter's notes for the Restatement observe that the exceptions "are so numerous, and they have so far eroded the `general rule' that it can now be said to be `general' only in the sense that it is applied where no good reason is found for departing from it." Restatement, Torts 2d § 409, comment b, at 370 (1965) [179 N.J. Super. at 440-441].
Despite the growing number of exceptions, however, courts have had difficulty arriving at a workable test for determining the delegability of their duties. As Prosser and Keeton conclude:
It is difficult to suggest any criterion by which the non-delegable character of such duties may be determined, other than the conclusion of the courts that the responsibility is so important to the community that the employer should not be permitted to transfer it to another. [Prosser and Keeton on Torts, supra, § 71, at 512].
In the situation presented here the duty plaintiff urges was assumed by National Erection for Borroughs, that is, to install the stairs in compliance with the state building code, cannot be said to be "so important and so preemptory that it will be treated as nondelegable." See Marek v. Professional Health Services, Inc., supra, 179 N.J. Super. at 441 (quoting Harper and James, supra, § 26.11, at 1406). The contracting of construction and renovation work is an area which traditionally falls within the general rule of nonliability. See Majestic Realty Associates, Inc. v. Toti Contracting Co., supra; Terranella v. Union Bldg. and Construction Co., supra; Gibilterra v. Rosemawr Homes, supra. Montgomery Ward reasonably could expect that Borroughs would subcontract at least a portion of the manufacture and installation of the stairs, shelving, and mezzanine. Borroughs diligently hired a contractor which regularly installs such components in store interiors and neither actively supervised the subcontractor nor retained control over the work site. Thus the subcontractor, National Erection, was in the best position to make a final inspection of the stairs and to minimize the risk to users of those stairs arising from the stairs' installation. The community interest referred to by Prosser does not compel a different result.
Plaintiff places primary reliance on Marek, in which we held nondelegable the duty "to carefully and diligently diagnose *465 within reasonable professional standards any condition or disease positively appearing on his chest x-ray." However, the public interest in restricting the delegation of the duty to provide competent and adequate medical care is surely much greater than that in restricting the delegation of the duty to comply with the state building code. Indeed, as we noted in Marek courts have been much more willing to hold nondelegable the duty to provide competent medical care. Id. at 442. It should also be noted that the result in Marek hinged in part on a well-established exception to the general nonliability doctrine not applicable in the instant case:
One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants. [179 N.J. Super. at 442 (quoting Restatement, Torts 2d, § 249, at 421 (1965)].
Plaintiff's reliance on Doloughty v. Blanchard Const. Co., 139 N.J. Super. 110 (Law Div. 1976), is also misplaced. Plaintiff cites Doloughty for the proposition that "a contractor and a subcontractor may not delegate to a sub-subcontractor their duty not to violate the Construction [Safety] Code." She reasons by analogy that if a contractor or a subcontractor may not delegate the duty to comply with the Construction Safety Code, they also should be barred from delegating the duty to comply with the state building code. However, we stated in Csaranko v. Robilt, supra, 93 N.J. Super. at 433, that the plain purpose of the prohibition relied on by plaintiff "is to fix responsibility for compliance with the general safety requirements upon the person or contractor who asserts dominion and control over the project." The rule cited by plaintiff thus does not compel a different result in the instant case, wherein Borroughs did not retain dominion and control over the project and thus was not responsible for National Erection's or Montgomery Ward's negligence.
*466 Finally, plaintiff argues that Borroughs should be held liable for National Erection's negligent installation of the stairs because National Erection is, in effect, "judgment-proof." However, there is no evidence in the record that National Erection is, as plaintiff contends, insolvent. Moreover, plaintiff cites no authority for the proposition that barring a plaintiff from recovery against a contractor or sub-contractor where the sub-subcontractor who has been found liable for plaintiff's injuries is insolvent is contrary to New Jersey public policy. As Judge Hunter stated in his dissent in Becker v. Interstate Properties, 569 F.2d 1203 (3d Cir.1978), cert. den., 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978), "New Jersey's courts have never defined the scope of a tort duty on the basis of an individual's financial capabilities." Id. at 1216.

III.
We are also satisfied that the trial court did not mistakenly exercise its discretion by denying plaintiff's pretrial motion to amend the pleadings to include a theory based on strict liability in tort against Borroughs and Rite-Hite. The original complaint in this action was filed on November 9, 1981, and charged Borroughs with negligence. An amended complaint was filed on February 25, 1982, and joined National Erection and Rite-Hite as additional defendants. The only theory of liability pleaded in the amended complaint was grounded on negligence. It was not until ten days before the scheduled trial date of May 2, 1983, that plaintiff attempted to amend the pleadings to include a claim for strict liability in tort. Plaintiff offered no excuse or reason for her delay in introducing a completely new and independent cause of action. The trial court denied the motion, in part, reasoning:
I think it's [the strict liability in tort claim] an entirely separate and distinct cause of action. This doesn't appear from my review of the pleadings submitted that there has been any discovery whatsoever on that theory. The motion comes at the eleventh-and-a-half hour, right before the trial when trial is this Monday, May 2nd [and] it will be impossible to have  defendants have the *467 right to conduct discovery that would be required so that their clients could have this case tried without any prejudice to them.
If the trial court had granted the motion it would have had to grant a continuance to prevent prejudice to defendants by permitting them time to conduct discovery and obtain the assistance of experts to assess the design and manufacture of the stairs and the stairs' condition before and after the delivery to the work site.
Of course, the underlying purpose of our rules of court is the "facilitation of business and the advancement of justice, to the end that cases will be determined on the merits. [Citation omitted].... [However], [t]hat broad purpose of the rules must be read in the light of the salutary admonition that the progressive judicial policy in permitting amendments, generally, is not intended to afford a refuge to languid or dilatory litigants." Branch v. Emery Transportation Co., supra, 53 N.J. Super. at 375. See also Samual Braen's Sons, etc. v. Fondo, 52 N.J. Super. 188, 195 (App.Div. 1958). In light of the lengthy and unexcused delay on the part of plaintiff in moving to amend the pleadings, we cannot conclude that the trial court mistakenly exercised its broad discretionary power in matters of this kind. See Jersey City v. Hague, supra, 18 N.J. at 602-603; Grobart v. Society for Establishing Useful Mfrs., supra, 2 N.J. at 146-147; Keller v. Pastuch, 94 N.J. Super. 499, 502-503 (App.Div. 1967), certif. den., 49 N.J. 372 (1967).
Beyond this, even if the trial court erred by denying the motion to amend the pleadings, there is no merit to plaintiff's claim that Rite-Hite and Borroughs should be held strictly liable for her fall and the injuries sustained. To establish a prima facie case of strict liability "a plaintiff has the burden of proving that (1) the product was defective; (2) the defect existed when the product left the hands of the defendant; and (3) the defect caused injury to a reasonably foreseeable user." O'Brien v. Muskin Corp., 94 N.J. 169, 179 (1983); Michalko v. *468 Cooke Color & Chem. Corp., 91 N.J. 386, 394 (1982). As the Supreme Court emphasized in O'Brien:
Proof that the product was defective requires more than a mere showing that the product caused the injury. The necessity of proving a defect in the product as part of the plaintiff's prima facie case distinguishes strict from absolute liability, and thus prevents the manufacturer from also becoming the insurer of a product. See Caterpillar Tractor Co. v. Beck, 593 P.2d 871, 877 (Alaska 1979); Birnbaum, "Unmasking the Test for Design Defect: From Negligence [to Warranty] to Strict Liability to Negligence," 33 Vand.L.Rev. 593, 600 n. 32 (1980). [94 N.J. at 179-180].
Plaintiff argues that the missing handrails and bolts in the stairs constituted "an obvious manufacturing defect" for which Rite-Hite and Borroughs should be held strictly liable. She claims that Rite-Hite and Borroughs, by virtue of the fact that they were under contract to Montgomery-Ward to manufacture, sell, and install the stairs, had an absolute duty to test and inspect the stairs before they were used. She therefore concludes that Rite-Hite and Borroughs were liable for any injuries arising from defects in the stairs, regardless of whether the defects arose during the stairs' installation or manufacture.
However, plaintiff's argument improperly equates "manufacture" with "installation" in order to hold Rite-Hite and Borroughs strictly liable under a manufacturing defect theory. Plaintiff thereby attempts to subvert the well-established rule insulating contractors from liability for their subcontractors' negligence. The courts have not yet extended the law of strict liability so far as to make a contractor strictly liable for defects in products which his subcontractor has manufactured or sold where the negligence of the subcontractor has caused the defect. To hold a manufacturer or seller strictly liable for a manufacturing defect the plaintiff must still establish that the defect did in fact exist when the product was distributed by the manufacturer or seller into the stream of commerce. Herbstman v. Eastman Kodak Co., 68 N.J. 1, 7-8 (1975). The manufacturer or seller is not liable for defects created or caused by others down the line of distribution after *469 the product leaves the manufacturer's or seller's control. See Michalko v. Cooke Color and Chem. Corp., supra, 91 N.J. at 395-396; Scanlon v. General Motors Corp., 65 N.J. 582, 591 (1974). Proof that the defect existed while in the defendant's control "has been made an explicit element of an action in strict liability in tort." Scanlon v. General Motors Corp., supra, 65 N.J. at 591.
We are thoroughly satisfied from our study of the record that there is no evidence that the stairs were in a defective condition when they left the control of their manufacturer and seller, Rite-Hite, or that National Erection placed any reliance on Rite-Hite's expertise during the installation of the stairs. Rite-Hite also apparently had no contractual duty to inspect the stairs once they were installed. As Borroughs argues "[a]t most we have a case of simple negligence: someone failed to install the handrail on the stockroom's staircase." Accordingly, there is no sound basis for invoking principles of strict liability against Rite-Hite. See Schipper v. Levitt & Sons, Inc., 44 N.J. 70, 96-99 (1965).
Plaintiff also lacks a sound basis for invoking strict liability against Borroughs. As the project's general contractor, Borroughs merely had a general duty to coordinate the manufacture and installation of the shelving, stairs, and mezzanine and to engage subcontractors as required. In fulfillment of that duty Borroughs subcontracted the stairs' manufacture and installation to Rite-Hite, which in turn subcontracted the labor portion of the installation to National Erection. Borroughs, like Rite-Hite, lacked any contractual duty to make a final inspection of the stairs. Borroughs thus never asserted the necessary control over the stairs prerequisite to plaintiff's being able to assert an action in strict liability against it.
Accordingly, the judgments and order under review are affirmed.
NOTES
[1] Counsel for Borroughs informed us at oral argument that the cross-appeal has been abandoned.